# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| MICHAEL R. LAUNIUS,         )<br>                             )<br>    Plaintiff,              )<br>                             )<br>v.                           )<br>                             )<br>WELLS FARGO BANK, N.A. and   )<br>WILSON & ASSOCIATES, P.L.L.C.,)<br>                             )<br>    Defendants.              ) | No. 3:09-CV-501<br>(Phillips) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss [Doc. 6]. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Wells Fargo moves to dismiss this lawsuit. [Id.].

This case is based upon the foreclosure of real property located in Sevierville, Tennessee. Plaintiff has sued Wells Fargo, the bank which foreclosed upon the property after Plaintiff defaulted on his mortgage payments. Plaintiff has also sued Wilson & Associates, P.L.L.C. ("Wilson & Associates"), the law firm which conducted the foreclosure sale. Plaintiff has sued the defendants for the following: (1) a claim for intentional infliction of emotional distress; (2) a claim under the Tennessee Consumer Protection Act; T.C.A. §§ 47-18-102, *et seq*; (3) a claim for promissory estoppel; and (4) a claim for intentional misrepresentation.

There are two issues before the Court. First, does the Statute of Frauds bar Plaintiff's claims? Second, if the claims are not barred, has Plaintiff pled sufficient facts to survive a 12(b)(6) motion?

1

For the following reasons, Wells Fargo's Motion to Dismiss [Doc. 6] is **GRANTED IN PART AND DENIED IN PART**. While the Statute of Frauds does not bar Plaintiff's claims, he has failed to plead sufficient facts to survive a 12(b)(6) motion. Accordingly, Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**I.     BACKGROUND**

As a preliminary matter, the Court notes that it has jurisdiction pursuant to 28 U.S.C. § 1332. Because jurisdiction "is predicated on the diversity of parties, we are obligated to apply state law in resolving the substantive issues presented." Rutherford v. Columbia Gas, 575 F.3d 616, 623 (6th Cir. 2009) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). Tennessee law therefore governs the substantive issues in this case.

The following facts are taken mostly from Plaintiff's complaint. In March 1996, Plaintiff purchased real property located at 1875 Blue Tick Way in Sevierville, Tennessee (hereafter, the "Property"). In order to finance the purchase, Plaintiff obtained a loan in the amount of $240,000.00 (hereafter, the "Loan") from RGMG, Inc. ("RGMC"). Plaintiff executed a Promissory Note and Deed of Trust which gave RGMC a security interest in the Property.

Later on, Wells Fargo became the successor in interest and assignee of RGMG. This gave Wells Fargo a security interest in the Property. To service the Loan, Wells Fargo used America's Servicing Company ("ASC"), a division of Wells Fargo.

In 2009, Plaintiff became delinquent on his Loan payments. The Deed of Trust provided that Plaintiff's debt could be accelerated if he fell behind in his payments. As a result, Wells Fargo began to initiate foreclosure proceedings on the Property. The Deed of Trust also provided that the mortgage holder (Wells Fargo, after it became the successor in interest to RGMG) could foreclose upon the Property if Plaintiff defaulted on his Loan payments.

From April 21, 2009 through July 14, 2009 (the foreclosure date), Plaintiff and his father called ASC representatives in an attempt to modify the Loan agreement. These modifications are known as "work-out plans." On April 21, 2009, Plaintiff spoke over the phone with a Wells Fargo representative about his financial condition. Plaintiff also authorized his father, Donald D. Launius, to speak with ASC representatives about the Loan.

Weeks later, Plaintiff received a letter from ASC dated June 2, 2009, indicating that his request for modification was denied. [Plaintiff's Complaint, Doc. 1 at 4]. However, the letter stated that "there might be alternative options available," and that he could "be reconsidered for work out options" by calling the phone number listed in the letter. [Id.]. After receiving this letter, Plaintiff spoke with ASC representatives over the phone about "work out plans." On June 10, 2009, an ASC representative told Plaintiff that he would be reconsidered for a "work-out plan."

Following these phone calls, Plaintiff received a letter dated June 12, 2009, from the law firm of Wilson & Associates stating that Plaintiff owed $231,249.72. The letter stated that the debt was due immediately, and that Wilson & Associates would be initiating foreclosure proceedings on the Property.

On June 18, 2009, Plaintiff's father called ASC representatives to discuss a "work-out plan." An ASC representative told him that she could delay the foreclosure, but that she could not stop it. Following this phone call, Plaintiff received a letter dated June 17, 2009, from Wilson & Associates specifying the date of the foreclosure sale.

On July 6, 2009, Plaintiff's father again called ASC representatives to discuss a "work-out plan." During that phone call, an ASC representative told him that "she would delay the foreclosure, in fact, she was doing so at that time," and that "the foreclosure would not occur until after a negotiator had been in contact by phone to discuss a work-out plan." [Id. at 7].

3

On July 13, 2009, Plaintiff received a letter from ASC (dated July 7, 2009) that provided a phone number for Plaintiff to call "if you [Plaintiff] would like to be considered for work-out options." [Id. at 8]. On July 14, 2009, the Property was foreclosed upon. Wilson & Associates conducted the foreclosure sale, and Wells Fargo purchased the Property for $234,996.31.

## II. STANDARD OF REVIEW

In ruling upon motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." DIRECTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." Id. (quoting Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000)). To survive a motion to dismiss, the "[f]actual allegations contained in [the] complaint must 'raise a right to relief above the speculative level.' " Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)). This "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.' " Id. (quoting Twombly, 127 S. Ct. at 1974).

## III. ANALYSIS

### A. The Statute of Frauds Does Not Bar Plaintiff's Claims

Wells Fargo argues that "the statute of frauds bars all of Plaintiff's claims because all of his claims are predicated on the enforceability of the alleged oral promise . . ." [Wells Fargo's Memorandum of Law in Support of its Motion to Dismiss, Doc. 7 at 7]. Defendant cites to T.C.A. § 29-2-101(b)(1) for support. That statute provides:

> No action shall be brought against a lender or creditor upon any promise or commitment . . . to alter, amend, renew, extend or otherwise modify or supplement

4

> any written promise, agreement or commitment to lend money or extend credit, unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the lender or creditor, or some other person lawfully authorized by such lender or creditor.

T.C.A. § 29-2-101(b)(1). Wells Fargo argues that the Statute of Frauds bars Plaintiff's claims because: (1) Plaintiff's claims are an attempt to modify a written agreement– that is, the Loan agreement; (2) Plaintiff is attempting to modify the written agreement through the use of oral statements; and (3) the written agreement may only be modified in writing. [*See* Wells Fargo's Memorandum of Law in Support of its Motion to Dismiss, Doc. 7 at 5-8]. Wells Fargo cites to Bilyeu v. Volunteer State, but its reliance upon that case is misplaced. 2006 WL 1005130 (Tenn. Ct. App. Apr. 17, 2006).

In Bilyeu, the plaintiff filed suit against a bank in chancery court. Id. The plaintiff argued that a bank officer made an oral promise to modify a loan agreement. Id. The plaintiff wanted to enjoin the bank from foreclosing upon his property, based upon the oral statements made by the bank officer. Id. The bank moved for judgment on the pleadings, arguing that the plaintiff's claims violated the Statute of Frauds, T.C.A. § 29-2-101(b)(1). Id. The trial court granted the motion and the Tennessee Court of Appeals affirmed. Id.

The present case is distinguishable from Bilyeu. The plaintiff in Bilyeu sought to modify a written agreement (the loan agreement) through the use of oral statements. Id. at *2. In fact, the plaintiff argued that the written agreement was actually modified by the oral statements. Id. The plaintiff did not sue the bank for other damages, but merely sought to avoid foreclosure upon the property. Id. The plaintiff's entire action was an attempt to modify a written agreement through the use of oral statements. Id.

In the present case, Plaintiff has sued Wells Fargo under four different theories: (1) a claim for intentional infliction of emotional distress; (2) a claim under the Tennessee Consumer Protection

5

Act, T.C.A. §§ 47-18-102, *et seq;* (3) a claim for promissory estoppel; and (4) a claim for intentional misrepresentation. Wells Fargo argues that "[t]he statute of frauds bars all of Plaintiff's claims because all of his claims are predicated on the enforceability of the alleged oral promise to delay the foreclosure." [Wells Fargo's Memorandum of Law in Support of its Motion to Dismiss, Doc. 7 at 7]. This is a mischaracterization of Plaintiff's claims. In fact, none of Plaintiff's claims are based upon the enforceability of the oral statements. While the Loan agreement– that is, the Deed of Trust and Promissory Note– falls within the Statute of Frauds[1], Plaintiff is not seeking to modify the Loan agreement. The Statute of Frauds only bars claims that attempt to modify a written agreement through oral statements. As evidenced by Plaintiff's "prayer for relief," he is not seeking to modify the Loan agreement:

> Wherefore, Plaintiff demands judgment against the defendants, jointly and severally, in an amount which is proven to compensate Plaintiff for the loss of value of the property sustained by the wrongful foreclosure and for the damages which flow from that loss, including but not limited to all recoverable compensatory damages . . .

[Plaintiff's Complaint, Doc. 1 at 11-12]. Unlike the plaintiff in <u>Bilyeu</u>, Plaintiff does not request that the Court modify the Loan agreement. Unlike the plaintiff in <u>Bilyeu</u>, Plaintiff does not seek to enjoin Wells Fargo from foreclosing upon the property. Rather, Plaintiff is seeking compensatory and punitive damages for the foreclosure that has already occurred. Plaintiff does not argue that the Loan agreement– the written agreement covered by the Statute of Frauds–was modified by oral statements. Rather, Plaintiff argues that he relied upon misrepresentations made by ASC representatives. Plaintiff does not argue that those misrepresentations actually modified the Loan

---

[1] The Loan agreement falls within the Statute of Frauds because it is a "written promise, agreement or commitment to lend money or extend credit." T.C.A. § 29-2-101(b)(1). *See* <u>Bilyeu v. Volunteer State Bank</u>, 2006 WL 1005130, at *2 (Tenn. Ct. App. Apr. 17, 2006) ("Both the promissory note and Mr. Bilyeu's personal guaranty fall within the scope of the statute of frauds.") (citing <u>In re Estate of Dickerson</u>, 600 S.W.2d 714, 716-17 (Tenn. 1980)).

agreement. None of Plaintiff's actions are predicated on the enforceability of the oral statements.

As courts in Tennessee recognize, the Statute of Frauds applies "only in suits for the breach or enforcement of a contract and are thus inapplicable to tort claims." In re Estate of Nelson, 2007 WL 851265, at *16 (Tenn. Ct. App. 2007). Plaintiff has filed tort claims against Wells Fargo, including claims for intentional infliction of emotional distress and intentional misrepresentation[2]. Plaintiff has also filed a claim under the Tennessee Consumer Protection Act. This claim is based upon the alleged deceptive or unfair practices of Wells Fargo– not the enforceability of oral statements. Accordingly, Wells Fargo's Motion to Dismiss [Doc. 6] is **DENIED IN PART, whereby the Court finds that Plaintiff's claims are not barred by the Statute of Frauds.**

    **B.**    **Plaintiff's Claims Are Dismissed Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure**

        **1.**    **Intentional Infliction of Emotional Distress**

Plaintiff has sued the Defendants for the "tort of outrageous conduct." [Plaintiff's Complaint, Doc. 1 at 11]. In Tennessee, the tort of intentional infliction of emotional distress is synonymous with the tort of outrageous conduct. *See* Lyons v. Farmers Ins. Exch., 26 S.W.3d 888, 893 (Tenn. Ct. App. 2000) ("Intentional infliction of emotional stress and outrageous conduct are simply different names for the same cause of action . . .").

To establish a claim for intentional infliction of emotional distress ("IIED"), the plaintiff must show that a defendant's conduct was "(1) intentional or reckless; (2) so outrageous that it cannot be tolerated in a civilized society; and (3) the cause of serious mental injury to the plaintiff." Bain v. Wells, 936 S.W.2d 618, 633 (Tenn. 1997). In determining whether conduct is "outrageous,"

---

[2] *See* Osceola Inv. v. Union Planters Nat'l Bank of Memphis, 1990 WL 4338, at *2 (Tenn. Ct. App. Jan. 25, 1990) (recognizing the "tort of negligent misrepresentation," and thus by extension, the tort of intentional misrepresentation).

courts are instructed to follow the Restatement (Second) of Torts:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

Restatement (Second) of Torts, Section 46, Comment D. Under this high standard, "mere insults, indignities, threats, annoyances, petty oppression or other trivialities" are not recognized as "outrageous." Bain, 936 S.W.2d at 622.

In addition, the mental injury must be "so severe that no reasonable person would be expected to endure it." Arnett v. Domino's Pizza I, L.L.C., 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003). Physical manifestations of emotional distress–though not required to sustain a claim–may serve as proof of serious mental injury. Miller v. Willbanks, 8 S.W.3d 607, 615 (Tenn. 1999). "Moreover, evidence that a plaintiff has suffered from nightmares, insomnia, and depression or has sought psychiatric treatment may support a claim of serious mental injury." Id. The intensity and duration of the mental distress "are also factors that may be considered in determining the severity of the injury." Id.

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to plead sufficient facts to support an IIED claim. First, Plaintiff has failed to identify any conduct that is "so outrageous that it is not tolerated by civilized society." Lyons, 26 S.W.3d at 893. Second, Plaintiff does not allege that he suffered serious mental injury. Because Plaintiff does not allege that he suffered serious mental injury, he has failed to establish an essential element. *See* Arnett, 124 S.W.3d at 540. Accordingly, Plaintiff's claim for intentional infliction of emotional

distress is **DISMISSED WITH PREJUDICE**.

### 2. Tennessee Consumer Protection Act

The Tennessee Consumer Protection Act ("TCPA") is designed to "[t]o protect consumers . . . from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce . . ." T.C.A. § 47-18-102(2). For the Act to apply, "the unfair or deceptive acts must affect trade or commerce, as defined by the Act." Davenport v. Bates, 2006 WL 3627875, at *17 (Tenn. Ct. App. Dec. 12, 2006). The terms "trade" and "commerce" are defined as "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things wherever situated." T.C.A. § 47-18-103(9).

Plaintiff does not fall within the ambit of the TCPA. Courts in Tennessee have held that the Act does not apply to a bank's repossession of collateral that was used to secure a loan. *See* Pursell v. First Am. Nat'l Bank, 937 S.W.2d 838, 842 (Tenn. 1996). In Pursell, the Tennessee Supreme Court held that the TCPA did not apply to a bank's repossession of collateral because it did not affect "trade or commerce." Id. at 839. In that case, the plaintiff sued a bank and repossession company under the TCPA. Id. The plaintiff had borrowed money from the bank to purchase a truck. Id. at 839. As part of the loan agreement, the bank was given a security interest in the truck. Id. In other words, the truck served as collateral to secure the loan. Id. Two years later, the plaintiff became delinquent on his loan payments. Id. The bank then repossessed the truck. Id.

The plaintiff filed suit under the TCPA, arguing that bank representatives made deceptive statements. Id. at 840. The bank moved to dismiss the TCPA claim, and the lower courts granted the motion. The Tennessee Supreme Court affirmed dismissal, recognizing that "[t]hough the definitions of 'trade or commerce' contained within the Tennessee Consumer Protection Act are

9

broad, they do not extend to this dispute, *which arose over repossession of the collateral securing the loan.*" Id. at 842 (emphasis added). While the TCPA is a broad statute, "[t]he parameters of the Act, however, do not extend to every action of every business in the State." Id. at 841.

Since Pursell, courts have declined to extend the TCPA to repossession actions. As one court has stated, "[w]e do not wish to upset the balancing of the interests of secured creditors and debtors which the legislature has achieved. Therefore, we will not extend the Tennessee Consumer Protection Act to cover repossessions without a clear expression of our legislature's intention to cover these transactions." Davenport, 2006 WL 3627875, at *19; *see also* Hunter v. Wash. Mut. Bank, 2008 WL 4206604, at *5 (E.D. Tenn. Sept. 10, 2008) ("The Supreme Court of Tennessee has held that the TCPA does not apply to repossession and collateral disposition activities because that conduct does not affect the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property as required by the TCPA.") (citing Pursell, 937 S.W.2d at 841-42). The Tennessee legislature has not clearly indicated that the TCPA should cover repossession actions.

In Schmidt v. Nat'l City Corp., this Court recognized that "[t]he actions of a bank in repossessing and disposing of its collateral do not constitute violations of the [TCPA], even if the bank acted wrongfully in repossessing the collateral." 2008 WL 5248706, at *8 (E.D. Tenn. Dec. 17, 2008). The plaintiffs in Schmidt argued that they suffered damages because their home was foreclosed upon. Id. at *1. The plaintiffs filed a TCPA claim against the mortgage holder (the bank) that foreclosed upon their home. Id. at 8. The bank moved for summary judgment on the TCPA claim and the Court granted the motion. Id. In particular, the Court found that the TCPA did not apply to the bank's foreclosure. Id.

The reasoning of Schmidt applies in the present case. Plaintiff has filed a claim under the TCPA against the mortgage holder (Wells Fargo). This claim is based upon statements that were

made concerning the foreclosure date. As the Court recognized in Schmidt, when a debtor defaults on a mortgage payment, and the mortgage holder forecloses upon the collateral that secured the loan (in this case, the Property), the TCPA does not apply. Id. Accordingly, Plaintiff's TCPA claim is **DISMISSED WITH PREJUDICE**.

### 3. Promissory Estoppel

Wells Fargo argues that promissory estoppel should not apply because "promissory estoppel is not an exception to the statute of frauds." [Wells Fargo's Memorandum of Law in Support of its Motion to Dismiss, Doc. 7 at 10]. While promissory estoppel is not an exception to the Statute of Frauds, it does provide an independent cause of action.[3] Therefore, the Court must determine whether Plaintiff has alleged facts supporting a promissory estoppel claim.

To establish a claim for promissory estoppel, the party must show the following:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Amacher v. Brown-Forman Corp., 826 S.W.2d 480, 482 (Tenn. Ct. App. 1991). As one court has stated, "[t]o successfully state a claim for promissory estoppel, the asserting party must first show that a promise was made and that it *reasonably relied upon the promise to its detriment*." Hermosa Holdings, Inc. v. Mid-Tennessee Bone & Joint Clinic, P.C., 2009 WL 711125, at *8 (Tenn. Ct. App. Mar. 16, 2009) (emphasis added) (citations omitted). In other words, "in order for the theory of

---

[3] As the Tennessee Court of Appeals has recognized, "the thrust of the cases is that promissory estoppel is not recognized as an exception to the Statute of Frauds." Nationsbank, N.A. (South) v. Millington Homes Inv., Ltd., 1999 WL 79204, at *3 (Tenn. Ct. App. Feb. 19, 1999). Rather, equitable estoppel, "a distinct and disparate doctrine, is recognized in Tennessee as an exception to the Statute of Frauds." Id. (citations omitted). This doctrine has been followed in cases "where to enforce the Statute of Frauds would make it an instrument of hardship and oppression, verging on actual fraud." Id. (quoting Baliles v. Cities Serv. Co., 578 S.W.2d 621, 624 (Tenn. 1979)).

11

promissory estoppel to apply, Appellant must show that the promises made . . . *induced an action or forberance* by Appellant to her detriment in reliance on those promises . . . ." Cochran v. Robinhood Lane Baptist Church, 2005 WL 3527627, at *5 (Tenn. Ct. App. Dec. 27, 2005) (emphasis added). A party demonstrates "reasonable reliance" by showing that there was a "substantial change of position by the promisee in reliance on the promise . . ." Alden v. Presley, 637 S.W.2d 862, 864 (Tenn. 1982). Accordingly, the Court must determine whether Plaintiff– assuming all factual allegations in the complaint are true– substantially changed his position as a result of promises made by ASC representatives.

In this case, Plaintiff did not substantially change his position in reliance upon any statements. Assuming that ASC representatives told Plaintiff that he would be "reconsidered" for a "work-out plan," Plaintiff was still obligated to pay his Loan. Plaintiff was never formally relieved of this obligation, and Plaintiff admits that he was unable to repay the Loan. In addition, Plaintiff never made alternate arrangements to pay for the Loan. Although Plaintiff was told that he would be "reconsidered" for a "work-out plan," he was never told that an arrangement had been reached. Such arrangement, if made, might have constituted a substantial change in position. *See* Burger King Corp. v. Hinton, Inc., 203 F.Supp. 2d 1357, 1364 (S.D. Fla. 2007) (denying a claim for promissory estoppel because the plaintiff did not provide "conclusive evidence showing that they received an instruction from BKC [Burger King Corporation] to cease their regular payments, as a 'workout plan' would be formulated as an alternative."); *see also* Osceola Inv. v. Union Planters Nat'l Bank of Memphis, 1990 WL 4338, at *3 (Tenn. Ct. App. Jan. 25, 1990) (rejecting a plaintiff's claim for promissory estoppel arising out of a bank's failure to approve a loan because there existed "no proof that the Plaintiff changed its plans in reliance on the promise."). At most, Plaintiff was told that the foreclosure would be delayed. Even assuming that ASC representatives told Plaintiff

12

that the foreclosure would be delayed, he did not change his position in reliance upon those statements. Plaintiff did not make any payments under the Loan, nor did ASC representatives agree to a "work-out plan." Plaintiff did not take any "action or forbearance" in relying upon the statements concerning foreclosure. Cochran, 2005 WL 3527627, at *5. Instead, Plaintiff remained in the same position that he was previously in: unable to avoid foreclosure. Because Plaintiff has failed to allege any facts that show he substantially changed his position in reliance upon the statements made by ASC representatives, his promissory estoppel claim is **DISMISSED WITH PREJUDICE**.

### 4. Intentional Misrepresentation

According to the complaint, Wells Fargo "misrepresented the intentions and actions which the Defendants took when they proceeded with the foreclosure sale of the property on July 14, 2009." [Plaintiff's Complaint, Doc. 1 at 9]. To establish a claim for intentional misrepresentation, Plaintiff must show:

(1) the defendant made a representation of an existing or past fact;

(2) the representation was false when made;

(3) the representation was in regard to a material fact;

(4) the false representation was made either knowingly or without belief in its truth or recklessly;

(5) plaintiff reasonably relied on the misrepresented material fact;

(6) plaintiff suffered damage as a result of the misrepresentation.

Walker v. Sunrise Pontiac-GMC Truck, 249 S.W.3d 301, 311 (Tenn. 2008) (citations omitted).

With regard to the first element, Wells Fargo argues that "it is unclear . . . whether Plaintiff's father was told that the foreclosure was delayed, was being delayed, or would be delayed." [Wells

Fargo's Memorandum of Law in Support of its Motion to Dismiss, Doc. 7 at 12 n.9]. However, in the complaint, Plaintiff alleges that during the July 6, 2009 phone call an ASC representative told his father that "she would delay the foreclosure, in fact, *she was doing so at that time*." [Plaintiff's Complaint, Doc. 1 at 7] [emphasis added]. The present tense "was doing" indicates that the ASC representative made a statement concerning a fact that existed at that time. Thus, with regard to at least the July 6, 2009 phone call, the first element has been met.

Even assuming that an ASC representative made a false statement during the July 6, 2009 phone call, Plaintiff has failed to show that he reasonably relied upon that statement. As Wells Fargo correctly argues, Plaintiff did not materially change his position in reliance upon the statements concerning foreclosure. [*See* Wells Fargo's Memorandum of Law in Support of its Motion to Dismiss, Doc. 7 at 13-14]. In fact, Plaintiff did not change his position at all:

> There is not one single allegation that Plaintiff took some action, or chose not to take some action, that might have prevented the foreclosure because he was told the foreclosure would not occur on July 14, 2009. Instead, Plaintiff maintained the same position that he had been in for months, i.e., Plaintiff could not cure the default and was completely dependent on the availability of a workout option. Put simply, Plaintiff has not alleged that anything changed from prior to the alleged misrepresentation to after it.

[Id. at 13]. For the same reasons that the Plaintiff did not show "reasonable reliance" in the context of his promissory estoppel claim[4], the Court finds that Plaintiff has failed to show "reliance" to support an intentional misrepresentation claim. Because Plaintiff has failed to show that he substantially changed his position in reliance upon the statements made by ASC representatives, his intentional misrepresentation claim is **DISMISSED WITH PREJUDICE**.

IV. **CONCLUSION**

For the foregoing reasons, Wells Fargo's Motion to Dismiss [Doc. 6] is **GRANTED IN**

---

[4] *See* Part III.B.3

**PART AND DENIED IN PART**.  While the Statute of Frauds does not bar Plaintiff's claims, he has failed to plead sufficient facts to survive a 12(b)(6) motion.  Accordingly, Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

    **IT IS SO ORDERED**.

                  **ENTER:**

                           <u>    s/ Thomas W. Phillips    </u>
                              United States District Judge